IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRETT JENSEN,<br><br>                              Plaintiff,<br><br>v.<br><br>JAMES GALE, a Logan City police officer, in his individual and official capacities; GARY JENSEN, Logan City Chief of Police, in his individual and official capacities; LOGAN CITY POLICE DEPARTMENT; CITY OF LOGAN,<br><br>                              Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 1:13-CV-00030 DN<br><br>District Judge David Nuffer |

This case arises out of Hal Weston's sexual assault of Brett Jensen while Jensen was unconscious and a patient at Logan Regional Hospital. Weston, a nurse at the hospital, was "convicted of aggravated sexual assault and is serving five years to life in prison."[1] This case file does not involve Weston or Logan Regional Hospital.

Jensen was in the hospital after he was arrested for public intoxication, public urination, and trespassing. Because he passed out in the police car en route to jail he was transported to the hospital for medical care. That is where the assault occurred.

In this case, Mr. Jensen makes claims[2] against James Gale ("Officer Gale"), the Logan City police officer who arranged for Mr. Jensen's transportation to the hospital and who remained at the hospital with Mr. Jensen; Gary Jensen, Logan City's chief of police ("Chief

---

[1] Plaintiff's Motion for Counter Summary Judgment and Memorandum in Support ("Counter Motion for Summary Judgment 45") at 4, docket no. 45, filed June 13, 2014; Defendants' Memorandum in Opposition to Plaintiff's Motion for Counter Summary Judgment at 2, docket no. 49 filed July 11, 2014.

[2] Complaint and Jury Demand ("Complaint"), docket no. 12, filed February 12, 2013.

Jensen"); the Logan City Police Department ("LCPD"); and the city of Logan ("Logan"),

asserting claims under 42 U.S.C. § 1983 and state law.

| | Title of Claim | Officer Gale | Chief Jensen | City of Logan | Logan Police Dept. |
|---|---|---|---|---|---|
| 1 | Failure to Protect - Violation of Due Process under the Fourteenth Amendment of the U.S. Constitution Cognizable under 42 U.S.C. § 1983 | | | | |
| 2 | Negligent Infliction of Emotional Distress | | | | |
| 3 | Gross Negligence | | | | |
| 4 | Negligence | | | | |
| 5 | Negligent Hiring, Training, Supervision, and Retention | | | | |
| 7 3 | Punitive Damages | | | | |
| 6 | Vicarious Liability | | | | |

Defendants have filed a number of motions seeking to dismiss the seven causes of action

listed in Mr. Jensen's Complaint, including a Motion to Dismiss,[4] a Motion for Judgment on the

Pleadings,[5] a Motion to Strike,[6] and a Motion for Summary Judgment.[7] Mr. Jensen opposes each

of Defendants' motions and has filed his own Counter Motion for Partial Summary Judgment.[8]

Although Defendants' motions collectively seek to dismiss the entire Complaint, each motion is

directed to specific causes of action or defendants, and no one motion is directed to the entire

---

[3] There is some confusion over the numbering of the causes of action. Defendants referred to the vicarious liability claim as the seventh cause of action (Complaint, at 12) as it is the seventh and last one in the Complaint, though the Complaint numbers it as the sixth (Complaint, at 12). This order refers to the vicarious liability claim as the sixth cause of action.

[4] Defendants' Motion to Dismiss and Memorandum in Support of Motion to Dismiss Claims against Logan City, Logan City Police Department, and Logan City Chief of Police Gary Jensen ("Motion to Dismiss 16"), docket no. 16, filed March 5, 2013.

[5] Defendants' Motion and Memorandum in Support of Motion for Judgment on the Pleadings ("Motion for Judgment on the Pleadings 21"), docket no. 21, filed May 1, 2013.

[6] Defendants' Motion to Strike Affidavit of Ronald Houston and Supporting Memorandum ("Motion to Strike 27"), docket no. 27, filed May 5, 2013.

[7] Defendants' Motion and Memorandum in Support for Summary Judgment of Defendants ("Motion for Summary Judgment 41"), docket no. 41, filed May 27, 2014.

[8] Counter Motion for Summary Judgment 45.

Complaint. Accordingly, each motion will be addressed separately under its own applicable standard. As discussed below, Defendants' Motion to Dismiss, Motion for Judgment on the Pleadings, and Motion for Summary Judgment are GRANTED, while Defendants' Motion to Strike and Plaintiff's Counter Motion for Summary Judgment are DENIED.

## TABLE OF CONTENTS

MOTION TO DISMISS 16 ........................................................................................................ 4
    STANDARD OF REVIEW ...................................................................................................... 4
    ALLEGATIONS OF FACT ...................................................................................................... 4
    DISCUSSION OF MOTION TO DISMISS ................................................................................. 6
        The Motion to Dismiss Claims 1-6 as to the LCPD Is Granted .......................................... 6
        The Motion to Dismiss Claims 1 and 6 as to Chief Jensen is Granted .............................. 7
        The Motion to Dismiss the Sixth Cause of Action as to Logan Is Granted ..................... 13
    SUMMARY OF MOTION AND CASE ..................................................................................... 14
DEFENDANTS' MOTION TO STRIKE AND PLAINTIFF'S 56(d) REQUEST 27 ................. 15
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS 21 – Claims 2-6 ......... 16
    MOTION FOR JUDGMENT ON THE PLEADINGS CONVERTED TO MOTION FOR SUMMARY
        JUDGMENT .................................................................................................................. 17
    STANDARD OF REVIEW .................................................................................................... 17
    ALLEGATIONS OF FACT .................................................................................................... 17
    DISCUSSION OF MOTION FOR JUDGMENT ON THE PLEADINGS ........................................... 18
        Governmental Immunity Bars Claims Against Officer Gale ............................................ 19
        The Motion for Judgment on the Pleadings Is Granted as to Logan ............................... 20
    SUMMARY OF MOTION AND CASE ..................................................................................... 28
MOTIONS FOR SUMMARY JUDGMENT 41 and 45 – Claims 1 and 7 ................................. 28
    STANDARD OF REVIEW .................................................................................................... 28
    UNDISPUTED MATERIAL FACTS ....................................................................................... 28
    DISCUSSION OF MOTIONS ................................................................................................ 31
        Officer Gale Is Entitled to Qualified Immunity ............................................................... 31
        Logan City Is Not Liable Under § 1983 ........................................................................... 43
    SUMMARY OF MOTION AND CASE ..................................................................................... 52
ORDER ..................................................................................................................................... 53

**MOTION TO DISMISS 16**

Defendants' Motion to Dismiss seeks to dismiss Mr. Jensen's vicarious liability claims against them as well as all other claims against the LCPD and Chief Jensen. For the reasons stated below, the Motion is GRANTED.

### STANDARD OF REVIEW

On a motion to dismiss, a court is obligated to "accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party."[9] "The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiffs allegations."[10]

### ALLEGATIONS OF FACT

The allegations in the Complaint will be accepted as true and all reasonable inferences will be made in favor of Mr. Jensen. However, this does not mean that Mr. Jensen's attempt to allege new or different facts in his Opposition to Defendants' Motion[11] must be accepted.[12] Only statements of fact alleged in the Complaint will be considered. This excludes the assertion that "Chief Jensen is ultimately responsible for hiring, training, retention, and termination of employment, including for police officers, at Logan Police Department[,]"[13] as this is not alleged in the Complaint. The allegations relevant to Defendants' Motion are set forth below.

---

[9] *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008) (quoting *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006)).

[10] *Archuleta*, 523 F.3d at 1283 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

[11] Plaintiff's Opposition to Defendants Motion to Dismiss ("Opposition to Motion to Dismiss 17"), docket no. 17, filed March 15, 2013.

[12] *See* Fed. R. Civ. P. 12(d) (requiring a court to either exclude matters outside the pleadings or convert the motion to one for summary judgment).

[13] Plaintiff's Opposition to Defendants Motion to Dismiss 17, at 3. While Mr. Jensen could amend his Complaint to include these allegations, such an attempt would be futile as Chief Jensen must be dismissed from this case for reasons in addition to those discussed in this section dealing with the Motion to Dismiss. *See infra* note 81 and accompanying text.

1.      Defendant James Gale is a police officer employed by the City of Logan, Logan Police Department.[14]

2.      Defendant Gary Jensen was the Chief of Police of the Logan City Police Department and policy maker for the Logan City Police Department.[15]

3.      The Logan City Police Department is a division of the City of Logan.[16]

4.      On January 20, 2012, at or about 10:50 PM, Officer James Gale responded to a dispute call at 700 North 800 East in Logan, Utah.[17]

5.      Soon after arriving, Officer Gale placed Plaintiff Brett Jensen under arrest. Plaintiff was highly intoxicated. Plaintiff was restrained in handcuffs and unable to defend or care for himself.[18]

6.      En route to the Logan City Police Department, Plaintiff passed out in the police vehicle and was unresponsive upon arrival.[19]

7.      Officer Gale contacted Emergency Medical Services ("EMS") to transport Plaintiff to Logan Regional Hospital.[20]

8.      Officer Gale accompanied Plaintiff and EMS to the hospital and accompanied Plaintiff who remained unconscious, incapacitated, and handcuffed into a treatment room at the hospital where Plaintiff remained in Officer Gale's custody as well as under the treatment and care of Logan Regional Hospital and its personnel.[21]

---

[14] Complaint ¶ 7.

[15] *Id.* ¶ 9.

[16] *Id.* ¶ 11.

[17] *Id.* ¶ 14.

[18] *Id.* ¶ 15.

[19] *Id.* ¶ 16.

[20] *Id.* ¶ 17.

[21] *Id.* ¶¶ 18, 19.

9.      Hal Weston, an emergency room technician, entered Plaintiff's room under direction from the supervising doctor. Hal Weston had unfettered access to plaintiff without any oversight from Officer Gale.[22]

10.     Hal Weston had pulled the curtain to the room in such a way as to prevent Officer Gale from seeing into the room.[23]

11.     Officer Gale checked in on Plaintiff at approximately 12:44 AM by entering the room and pulling back the curtain slightly. He observed Hal Weston performing oral sex on Plaintiff.[24]

12.     Officer Gale did not stop or arrest Hal Weston or take any other measure to stop the ongoing sexual assault. Instead, he backed away from the curtain and walked down the hallway into another room.[25]

13.     Hal Weston was allowed to complete his shift at Logan Regional Hospital without interruption by police or hospital security or staff.[26]

## DISCUSSION OF MOTION TO DISMISS

### The Motion to Dismiss Claims 1-6 as to the LCPD Is Granted.

The LCPD is named as a defendant in every cause of action except the seventh. However, as Defendants point out, a police department "is not a separate suable entity."[27] Plaintiff does not argue this point, but asks the court to "use . . . Logan City and Logan Police Department interchangeably" and "refrain from dismissing Logan Police Department," on the basis that "the

---

[22] *Id.* ¶ 23.

[23] *Id.* ¶ 25.

[24] *Id.* ¶¶ 24, 26, 27.

[25] *Id.* ¶¶ 28, 29.

[26] *Id.* ¶¶ 31, 33.

[27] *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985).

Police Department is responsible for directing, supervising, training and hiring its employees."[28]
Any liability arising from a breach of a duty related to directing, supervising, training, and hiring
would fall on Logan City, not the non-entity LCPD. There is no need to keep the LCPD as a
separate defendant in this case. All claims against the LCPD are accordingly dismissed with
prejudice.

**The Motion to Dismiss Claims 1 and 6 as to Chief Jensen is Granted.**

Three causes of action are pled against Chief Jensen: the first, a claim brought under 42
U.S.C. § 1983 for failure to protect; the fifth, a state law claim for negligent hiring, training,
supervision, and retention; and the sixth, a state law claim for vicarious liability.

(1) First Cause of Action—Failure to Protect (42 U.S.C. § 1983): Chief Jensen cannot be
held vicariously liable under § 1983 and Plaintiff has not alleged facts supporting a
conclusion that Chief Jensen acted with deliberate indifference.

Although the first cause of action includes Chief Jensen as a Defendant, the allegations
contained within that cause of action do not reference Chief Jensen. Instead, the cause of action
is solely concerned with the actions taken by Officer Gale on the night in question. There are no
allegations that Chief Jensen was present or took any action on that night that deprived Mr.
Jensen of his constitutional rights. Because "[r]*espondeat superior* or vicarious liability will not
attach under § 1983,"[29] the first cause of action, as against Chief Jensen, construed in the light
most favorable to Mr. Jensen, might only be seen as a claim if it is meant to allege direct liability
of Chief Jensen for "his failure to establish proper procedures or adequately train or supervise
personnel [, which] led to the deprivation of [Plaintiff's] constitutional rights."[30]

---

[28] Opposition to Motion to Dismiss 17, at 6 (alteration to formatting and capitalization).

[29] *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

[30] *McClelland v. Facteau*, 610 F.2d 693, 696 (10th Cir. 1979).

A direct claim against Chief Jensen requires Mr. Jensen to allege three elements: "(1) personal involvement; (2) causation; and (3) state of mind."[31] The "personal-involvement requirement does not mean . . . that direct participation is necessary."[32] Alleging that "the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a [constitutionally deficient] policy" is enough to satisfy this prong.[33]

The second element, causation, requires a plaintiff to demonstrate "that the defendant's alleged action[s] caused the constitutional violation" directly or that "the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights."[34]

Finally, a plaintiff must demonstrate "that the defendant took the alleged actions with the requisite state of mind."[35] For a claim based on a failure to train (or supervise), this requires showing that the lack of training "amounts to deliberate indifference to the rights of persons with whom the police come into contact."[36] "Deliberate indifference requires that the official 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"[37] "'Mere negligence' is not enough" to hold a supervisor liable under § 1983.[38]

Mr. Jensen has alleged few facts in support of his claim against Chief Jensen. He has alleged that Chief Jensen "was the Chief of Police . . . and policy maker for the Logan City

---

[31] *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 767 (10th Cir. 2013).

[32] *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013).

[33] *Id.* (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)).

[34] *Schneider*, 717 F.3d at 768 (internal quotation marks omitted) (quoting *Dodds*, 614 F.3d at 1185).

[35] *Schneider*, 717 F.3d at 769.

[36] *City of Canton*, 489 U.S. at 388.

[37] *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1154 (10th Cir. 2006).

[38] *Id.*

Police Department."[39] Beyond this factual allegation the Complaint contains a number of legal conclusions, including assertions that Chief Jensen acted "negligently and recklessly" in "failing to recruit and hire [qualified] officers," "failing to adopt, implement and/or follow polices designed to reasonably protect Plaintiff," "failing to properly adhere to state, federal and otherwise accepted laws and standards," "failing to properly supervise Officer Gale," "failing to properly train officers," "retaining Officer Gale," and "entrusting Officer Gale with the control of Plaintiff."[40] Under the standard set forth above, however, Mr. Jensen's asserted legal conclusions are not accepted as true.[41]

Mr. Jensen's allegations cannot satisfy any of the three required elements. He makes no allegations that Chief Jensen was personally involved or took any action on the night in question. While Mr. Jensen asserts that Chief Jensen can make policy, he alleges no policy, procedure, or standard that directly "set in motion a series of events" that led to Mr. Jensen's injuries. Mr. Jensen has not even alleged in his Complaint that Chief Jensen was responsible for hiring, training, or supervising Officer Gale.[42] It then follows that, because there is no predicate personal involvement, Mr. Jensen cannot demonstrate a causal connection between Chief Jensen's actions and his injury. Finally, even if some of Mr. Jensen's legal conclusions as to Chief Jensen's failure to train are accepted as satisfying the first two prongs of the analysis, Mr. Jensen has, at most, only alleged that Chief Jensen acted "negligently and recklessly." This

---

[39] Complaint ¶ 9.

[40] *Id.* ¶ 69.

[41] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

[42] Although the fifth cause of action in the Complaint is labelled "Negligent Hiring, Training, Supervision, and Retention," the claim is levelled against Chief Jensen, Logan, and LCPD collectively and there are no allegations specifically referencing Chief Jensen. Mr. Jensen's belated attempt to remedy this in his Opposition to Motion to Dismiss 17, at 3 is insufficient. Furthermore, while Mr. Jensen could amend his Complaint to include these allegations, such an attempt would be futile as Chief Jensen must be dismissed from this case for reasons in addition to those discussed in this section dealing with the Motion to Dismiss. *See infra* note 81 and accompanying text.

allegation is insufficient to meet the requirement that Mr. Jensen allege that Chief Jensen acted

with the requisite culpable state of mind. "'[M]ere negligence' is not enough" to "establish that

the supervisor acted knowingly or with 'deliberate indifference.'" Thus, the first cause of action

must be dismissed, with prejudice, as to Chief Jensen.

> (2) Fifth Cause of Action—Negligent Employment: Chief Jensen cannot be held liable as he is not Officer Gale's employer and Officer Gale did not pose a foreseeable risk of harm to Plaintiff.

Plaintiff's fifth cause of action encompasses state law claims for negligent hiring,

training, supervision, and retention. Under Utah law, these various claims are actually the same

cause of action.

> The causes of action variously termed 'negligent hiring,' 'negligent supervision,' and 'negligent retention' are all basically subsets of the general tort of negligent employment. The factual difference among the three types of negligent employment is based on the time during the employment relationship at which the employer can be charged with knowledge of the employee's unfitness.[43]

Thus, the elements of each claim are the same, differentiated only by the time when the

employer's conduct became negligent. A court in this district, in discussing Utah's tort of

negligent employment, enumerated the elements: "a plaintiff must show that (1) the employer

knew or should have known that its employees posed a foreseeable risk of harm to third parties;

(2) the employees inflicted such harm; and (3) the employer's negligent hiring, supervision, or

retention of the employees proximately caused the injury."[44]

---

[43] _Retherford v. AT & T Commc'ns of Mountain States, Inc._, 844 P.2d 949, 973 n.15 (Utah 1992); _see also_ _C.C. v. Roadrunner Trucking, Inc._, 823 F.Supp. 913, 922 (D. Utah 1993) ("The Utah Supreme Court has recently considered the tort of negligent employment stating that it encompasses negligent hiring, negligent supervision, and negligent retention."). As the parties have not provided any separate description of the elements of "negligent training," it is assumed that the tort of "negligent training" would also be encompassed by the general Utah tort of "negligent employment." Even if it is not, Mr. Jensen has provided no allegations other than insufficient conclusory statements in support of such a claim.

[44] _Roadrunner Trucking_, 823 F.Supp. at 922 (citing _Retherford_, 844 P.2d at 973 n.15).

Mr. Jensen alleges that Officer Gale "was a police officer employed by the City of Logan"[45] and was involved in the events set forth in the Complaint due to "his employment with the City of Logan."[46] While the Complaint alleges that Chief Jensen was the "policy maker" for the LCPD, nowhere in the Complaint does Plaintiff allege Chief Jensen employed Officer Gale, hired Officer Gale, or even had the authority to decide whether to continue or terminate Officer Gale's employment. Logan, not Chief Jensen, was Officer Gale's employer.

The cause of action, like the sixth cause of action described below, can only be asserted against an *employer*.[47] As Chief Jensen was not Officer Gale's employer, Chief Jensen cannot be responsible for negligent employment. While it is true that an employing entity can only act through individual employees, the claim of negligent employment can only apply to employers, not employees. Mr. Jensen has not provided any case law showing that Utah allows a supervisor or an organization's "policy maker" to be held personally liable as an employer for the actions of another employee.[48] And, as Defendants point out, a claim against Chief Jensen in his official capacity is simply "another way of pleading an action against an entity [Logan City in this case] of which an officer is an agent."[49] Thus, although a claim of negligent employment may be asserted against Logan City, such a claim may not be asserted against Chief Jensen. This alone is enough to dismiss the claim for negligent employment against Chief Jensen, but there is an additional ground upon which the negligent employment claim can be dismissed.

---

[45] Complaint ¶ 7.

[46] *Id.* ¶ 80.

[47] *J.H. By and Through D.H. v. West Valley City*, 840 P.2d 115, 124 (Utah 1992) ("Regardless of whether an employer may be held liable under the doctrine of respondeat superior, an *employer* may be directly liable for its acts or omissions in hiring or supervising its employees." (emphasis added)).

[48] *See, e.g.*, *id.* at 122–126 (discussing claims of alleged negligent employment of a police officer against the city that employed the officer, not against a supervisor or chief of police).

[49] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Even if Chief Jensen could be held personally liable for negligent employment as Officer Gale's supervisor, and even assuming, in the light most favorable to Mr. Jensen, that Officer Gale did have a duty to protect Mr. Jensen during the events in question,[50] Plaintiff has failed to allege that Chief Jensen "had a duty to supervise and direct [Officer Gale] in a manner so as to protect persons" in Officer Gale's care.[51] Mr. Jensen has not asserted any facts supporting an inference that Chief Jensen knew or should have known that Officer Gale posed a foreseeable risk of harm, as is required by the first element of negligent employment.[52] There are no factual allegations or reasonable inferences that can be drawn to suggest that Officer Gale had failed to protect other individuals in the past; that Chief Jensen "knew or had reason to know that [Officer Gale] had . . . characteristics that would make him a risk as a police officer;"[53] that Officer Gale had "d[one] or said anything prior to [the night] that would have put [Chief Jensen] on notice that he had a propensity to commit such acts;"[54] that Chief Jensen "had . . . notice of any problem with [Officer Gale] or with any of the officers;"[55] or that Chief Jensen had "reason to know that [he] should take special precautions when supervising [Office Gale]."[56]

---

[50] The question of the extent of Officer Gale's constitutional duty to protect Mr. Jensen is addressed more fully below in the section dealing with the parties' cross-motions for summary judgment. For purposes of this motion, such a duty is assumed to exist.

[51] *J.H.*, 840 P.2d at 126.

[52] Foreseeability has sometimes been addressed in terms of proximate causation. *See id.* at 124 ("Plaintiff has not established that West Valley's failure was the cause of his harm. He has produced no evidence that West Valley knew or had reason to know that Lyday had deviant characteristics that would make him a risk as a police officer.") Other times it arises as a part of a plaintiff's burden of proving that a supervisor even had a duty to train or supervise an employee. *See Moradian v. Deer Valley Resort Co.*, 2012 WL 3544820 at *6 ("[T]o prove such a duty [to supervise and direct] exists, the plaintiff is 'required to show that such acts were foreseeable. There is no duty to protect persons from unforeseeable risks of harm at the hands of another.'"). Regardless, Mr. Jensen has not made out a prima facie case.

[53] *J.H.*, 840 P.2d at 124.

[54] *Id.*

[55] *Id.* at 126.

[56] *Id.*

Accordingly, even if Utah law does allow a supervisor to be held liable for negligent employment, the facts alleged are insufficient to support an inference that Chief Jensen "knew or should have known that [Officer Gale] posed a foreseeable risk of harm to third parties." Thus, as Mr. Jensen has failed to allege facts sufficient to support a claim of negligent employment, the fifth cause of action must be dismissed with prejudice as to Chief Jensen.

      (3) Sixth Cause of Action—Vicarious Liability: Chief Jensen cannot be held liable as he is not Officer Gale's employer.

Mr. Jensen's sixth cause of action for vicarious liability is different from the direct negligence claim found in the fifth cause of action. Instead of claiming that Officer Gale's employer was itself negligent, he attempts to hold Officer Gale's employer liable for the officer's own alleged negligence under a theory of *respondeat superior*. This doctrine allows "an employer [to] be held vicariously liable for the acts of its employee if the employee is in the course and scope of his employment at the time of the act giving rise to the injury."[57]

Similar to the fifth cause of action, because there is no allegation that Chief Jensen was Officer Gale's employer, Chief Jensen cannot be held vicariously liable for Officer Gale's actions. Mr. Jensen has not provided any case law showing that Utah allows a supervisor or an organization's "policy maker" to be held vicariously liable for the actions of a fellow employee. All Utah cases cited by the parties exclusively refer to the allegedly vicariously liable party as the employee's employer, not her supervisor. Accordingly, the sixth cause of action must be dismissed with prejudice as to Chief Jensen.

**The Motion to Dismiss the Sixth Cause of Action as to Logan Is Granted.**

Defendant Logan joined the Motion to Dismiss to request the dismissal of "plaintiff Brett Jensen's Vicarious Liability claims against [it] on the basis that a municipality . . . may not be

---

[57] *Newman v. White Water Whirlpool*, 2008 UT 79, ¶ 8, 197 P.3d 654.

held vicariously liable under 42 U.S.C. § 1983."[58] Logan argued that the sixth cause of action was an attempt to hold it "vicariously liable under § 1983 for the alleged acts of Officer Gale."[59] Although it is true that "[r]espondeat superior or vicarious liability will not attach under § 1983,"[60] Defendants are incorrect in asserting that this requires dismissal of the sixth cause of action. As Plaintiff correctly states, "the vicarious liability claims presented in Plaintiff's complaint were not brought under section 1983. They are claims governed by Utah State law."[61] There is no question that Utah allows vicarious liability claims,[62] and Plaintiff has asserted sufficient facts to make out a prima facie case of vicarious liability against Officer Gale's employer for the state law claims in the second through fifth and seventh causes of action.[63] However, as the state law vicarious liability claim is barred under the Utah Governmental Immunity Act and will be disposed of as described later in the portion of the order discussing Defendants' Motion for Judgment on the Pleadings, the Motion will be granted in its entirety in order to preserve clarity.

### SUMMARY OF MOTION AND CASE

For the reasons discussed above, Defendants' Motion to Dismiss is granted in its entirety. All of Plaintiff's claims against the LCPD and Chief Jensen are hereby dismissed with prejudice, leaving federal and state law claims against Defendants Officer Gale and Logan only.

---

[58] Motion to Dismiss 16, at 1.

[59] Motion to Dismiss 16, at 4.

[60] *City of Canton*, 489 U.S. at 385.

[61] Opposition to Motion to Dismiss 17, at 4.

[62] *See, e.g.*, *Newman*, 2008 UT 79, ¶ 9 (setting forth the three-part test for vicarious liability).

[63] *See* Complaint ¶¶ 7, 14–15, 81–88.

## DEFENDANTS' MOTION TO STRIKE AND PLAINTIFF'S 56(d) REQUEST 27

Prior to discussing Defendants' Motion for Judgment on the Pleadings, [64] Defendants'
Motion to Strike[65] must be addressed. Defendants seek to strike the affidavit of Ronald
Houston,[66] Mr. Jensen's psychologist. The affidavit was filed with Mr. Jensen's Opposition[67] to
Defendants' Motion for Judgment on the Pleadings. Defendants make several arguments in
support of their motion to strike, including:

- the affidavit is irrelevant as Plaintiff's state law claims are barred under Utah's
  Governmental Immunity Act;

- the affidavit is inadmissible as it is not based on personal knowledge because Dr.
  Houston was not present during the relevant events and could only gain his
  information from Mr. Jensen, who was himself unconscious for all of the relevant
  events except the police's phone call informing him of the assault; and

- the affidavit is inadmissible as Dr. Houston purports to render legal opinions in
  the guise of affirmations of fact.

Defendants are correct in that Mr. Jensen is attempting to assert a new basis for his
causes of action by alleging facts and damages not originally asserted in his Complaint. Many of
the statements contained in the affidavit are legal conclusions or lack the requisite foundation of
personal knowledge. However, in the interest of resolving all of Mr. Jensen's potentially
meritorious claims against Defendants, the affidavit will not be stricken and facts outside the
Complaint will be considered. Accordingly, Defendants' Motion for Judgment on the Pleadings

---

[64] Motion for Judgment on the Pleadings 21.

[65] Motion to Strike 27.

[66] Affidavit of Ronald Houston ("Houston Affidavit 23-1"), docket no. 23–1, filed May 13, 2013.

[67] Plaintiff's Opposition to Defendants' Motion for Judgment on the Pleadings and Request for Hearing
("Opposition to Judgment on Pleadings 23"), docket no. 23, filed May 13, 2013.

will be converted into a motion for summary judgment.[68] Although a conversion would typically require notice to Defendants to give them the opportunity to respond to the factual allegations,[69] such notice will not be given because Mr. Jensen's newly asserted claim of an independent, second set of injuries fails under the Utah Governmental Immunity Act, as discussed below. Accordingly, Defendants' Motion to Strike is DENIED.

As an additional matter, Mr. Jensen, in his Opposition to Defendants' Motion to Strike, requests that the court either not strike the affidavit or grant a continuance under Rule 56(d) for additional discovery so he can provide additional facts in support of the affidavit. As the affidavit has not been stricken, this alternative request will not be considered.

**SUMMARY**

For the foregoing reasons, Defendants' Motion to Strike is denied. The remaining motions are Defendants' Motion for Judgment on the Pleadings dealing with all remaining state law claims, which has been converted into a motion for summary judgment, and cross-motions for summary judgment on Plaintiff's civil rights claims.

## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS 21 – CLAIMS 2-6

Defendants' Motion for Judgment on the Pleadings seeks to dismiss the second, third, fourth, fifth, and sixth causes of action.[70] As all claims against the LCPD and Chief have been dismissed pursuant to Defendants' Motion to Dismiss, only Officer Gale and Logan City remain as defendants to these causes of action. For the reasons stated below, the Motion is GRANTED.

---

[68] *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c) [Motion for Judgment on the Pleadings], matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("If a district court intends to rely on other evidence, it must convert the . . . motion to a motion for summary judgment, giving proper notice to all parties.").

[69] Fed. R. Civ. P. 12(d).

[70] Motion for Judgment on the Pleadings 21.

**MOTION FOR JUDGMENT ON THE PLEADINGS**
**CONVERTED TO MOTION FOR SUMMARY JUDGMENT**

Mr. Jensen has requested that Defendants' Motion for Judgment on the Pleadings be converted into one for summary judgment so he can introduce evidence, by way of his psychologist's affidavit,[71] of facts outside of the Complaint. This affidavit is also the focus of Defendants' Motion to Strike.[72] As discussed, the affidavit will not be stricken and the factual (though not legal) assertions contained therein will be considered. Accordingly, as discussed above, Defendants' Motion for Judgment on the pleadings is hereby converted into a motion for summary judgment.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate if there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[73] Although the court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, [the opposing] party must identify sufficient evidence which would require submission of the case to a jury."[74] "Unsubstantiated allegations carry no probative weight in summary judgment proceedings. To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[75]

**ALLEGATIONS OF FACT**

The relevant undisputed material facts are largely the same as those set forth below in the section discussing the parties' Cross-Motions for Summary Judgment and will not be repeated

---

[71] Houston Affidavit 23-1.

[72] Motion to Strike 27.

[73] *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1402 (10th Cir. 1997).

[74] *Id.*

[75] *Cypert v. Indep. Sch. Dist. No. I-050*, 661 F.3d 477, 481 (10th Cir. 2011).

here. The only difference in the factual record for this motion is Mr. Jensen's introduction of new facts by way of Mr. Houston's affidavit. Mr. Jensen's introduction of facts and claims outside of the pleadings does not create an issue of material fact because Defendants have not disputed the additional facts. The relevant additional facts provided in the affidavit are set forth here.

1.      Mr. Jensen was not informed of the sexual assault by hospital personnel or police prior to or while being discharged from the hospital.[76]

2.      Police informed Mr. Jensen of the assault that had taken place the next day over the telephone.[77]

3.      When the police informed Mr. Jensen of the assault, there was no supportive environment equipped with healthcare professionals who could provide support and assistance as there would have been at the hospital.[78]

4.      Plaintiff suffered psychological and emotional trauma from being informed by the police that he was sexually assaulted while unconscious.[79]

5.      The police's conduct in communicating with Mr. Jensen is a separate source of emotional and mental distress and injury.[80]

**DISCUSSION OF MOTION FOR JUDGMENT ON THE PLEADINGS**

This motion hinges on the application of Utah's Governmental Immunity Act ("GIA") to the remaining two defendants, Officer Gale and Logan. Defendants assert that the GIA mandates the dismissal of all state law claims, namely the second through sixth causes of action described in the Complaint. The pleadings, briefs, and affidavits presented show that the parties agree on

---

[76] Houston Affidavit 23-1, ¶¶ 6, 8, 12, 14.

[77] *Id.* ¶¶ 6, 11, 14.

[78] *Id.* ¶¶ 6, 8, 12.

[79] *Id.* ¶¶ 3, 4, 9, 10, 11, 14.

[80] *Id.* ¶¶ 3, 4, 9, 10.

the material facts. Thus, the only question is whether, under the undisputed facts, the GIA applies. Both Plaintiff and Defendant admit that it does, but this leaves the issue of its effect on each defendant. For the reasons described below, Defendants are entitled to judgment as a matter of law under the GIA, and their Motion is granted.

**Governmental Immunity Bars Claims Against Officer Gale.**

Under the GIA, "an action under this chapter against a governmental entity for an injury caused by an act or omission that occurs during the performance of an employee's duties, within the scope of employment, or under color of authority is a plaintiff's exclusive remedy."[81] This exclusive remedy provision is buttressed by the GIA statement that "no employee may be joined or held personally liable for acts or omissions occurring during the performance of the employee's duties[,] within the scope of employment[,] or under color of authority."[82] The only exceptions to these protections for government employees are found in § 63G-7-202(3)(c), which permits a plaintiff to bring a civil action against an employee only when the employee has "acted or failed to act through fraud or willful misconduct;" injured the plaintiff while under the influence of controlled substances; committed perjury, or either fabricated evidence or failed to disclose evidence. Plaintiff has not alleged that any of these exceptions apply.

Therefore, the state law causes of action brought against Officer Gale cannot survive. The pleadings, including the additional facts sought to be asserted by Mr. Jensen for the first time in the briefing on this motion, provide no facts to suggest that Officer Gale acted or failed to act through fraud or willful misconduct, was under the influence of controlled substances, committed perjury, or fabricated or altered evidence. Accordingly, Officer Gale is entitled to

---

[81] Utah Code § 63G-7-202(3)(a).

[82] *Id.* § 63G-7-203(4).

judgment as a matter of law on the second through sixth causes of action, which are all state law claims.

**The Motion for Judgment on the Pleadings Is Granted as to Logan.**

Utah courts use a three step analysis to determine whether a governmental entity is immune under the GIA: "(1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver."[83] The parties agree that the first two steps have been satisfied by affirmative answers. The parties only argue over whether there is an exception to this waiver that applies under the facts of this case. Mr. Jensen also argues that the affidavit of Mr. Houston, Mr. Jensen's psychologist, provides a separate basis for his state law claims, as there was "separate conduct, independent from the sexual assault, which caused separate and distinct injuries to Mr. Jensen."[84] First, the injuries pled in the Complaint will be addressed. Then, Mr. Jensen's additional, extra-Complaint materials will be discussed.

(1) Logan is immune from suit under the assault and battery exceptions since Plaintiff's injuries arose from the sexual assault by Hal Weston.

The injuries alleged by Mr. Jensen in his Complaint arise out of Officer Gale's alleged failure to protect Mr. Jensen from sexual assault on the night of January 20, 2012.[85] Defendants point to § 63G-7-301(5)(b), which is an exception to the waiver of immunity for negligent acts or omission. This section states that

Immunity from suit of each governmental entity is not waived . . . if the injury arises out of, in connection with, or results from: . . . (b) assault, battery, false imprisonment, false arrest, malicious prosecution, intentional trespass, abuse of

---

[83] *Blackner v. State, Dep't of Transp.*, 2002 UT 44, ¶ 10, 48 P.3d 949.

[84] Opposition to Judgment on Pleadings 23, at 6.

[85] *See, e.g.*, Complaint ¶ 48 ("Officer Gale and the City of Logan, Logan Police Department breached their duty when Officer Gale witnessed Hal Weston sexually assaulting Plaintiff, and Officer Gale withdrew and walked away without attempting to stop the conduct.").

process, libel, slander, deceit, interference with contract rights, infliction of emotional anguish, or violation of civil rights.

The question is whether Mr. Jensen pleads injury "arises out of, in connection with, or results from" assault, battery, or one of the other listed exceptions. Mr. Jensen apparently concedes this point in his opposition, as he states that his "set of injuries ar[ose] from the sexual assault."[86] A plain reading of the section of the GIA quoted immediately above shows that because the injuries arose from the sexual assault, immunity has *not* been waived as to Logan, and the governmental entity cannot be sued for the sexual assault committed on Mr. Jensen by the hospital employee.

The remaining question is whether Mr. Jensen can avoid the dismissal of his state law claims against Logan by his introduction of matters outside of the Complaint.

(2) Although Mr. Jensen attempts to assert new claims and facts without amending his Complaint, Defendants would still be entitled to judgment as a matter of law on those new claims under the GIA.

Seemingly recognizing that Logan is immune from suit under section 301(5)(b) of the GIA, Mr. Jensen attempts to create "at least one other set of injuries caused by the negligence of Logan City Police," allegedly separate and independent from the injuries arising out of the sexual assault.[87] In making this attempt, Mr. Jensen argues (for the first time in this case, by way of an affidavit attached to his Opposition to Judgment on the Pleadings 23 and through arguments in the memorandum itself) that "the focus of Plaintiff's second, third, fourth, fifth, and sixth causes of action" is *not* the physical and emotional injuries caused by Hal Weston by committing the sexual assault, but rather "the separate injuries" caused by the Logan police when they "negligently failed to protect Plaintiff and when police negligently informed Plaintiff of the

---

[86] Opposition to Judgment on Pleadings 23, at 7.

[87] *Id.* at 8 ("Because there are two separate sources of trauma, and one is derived from Defendants' acts and omissions (and not from the sexual assault) which caused such significant psychological injuries that Plaintiff was in danger of suicide, Defendants do not enjoy government immunity.")

sexual assault without the appropriate mental health support and at a time and place where there was significant potential for suicide."[88]

Mr. Jensen's claim that the focus of his Second through Sixth causes of action is really the separate set of injuries (and not the injuries arising out of Officer Gale's failure to protect Mr. Jensen from the sexual assault) is disproved by the allegations in the Complaint. There is no discussion or description in the "General Allegations" section of the Complaint of how Mr. Jensen learned of the sexual assault. The only allegation in the Complaint that even suggests that this separate set of injuries exists is found in paragraph 54, part of the allegations for the second cause of action, which alleges that "Defendants should have realized their conduct involved an [sic] unreasonable risk of Causing [sic] the emotional distress and harm to Plaintiff and that the harm inflicted might result in illness or bodily harm including but not limited to the spread of sexually transmitted infection." However, even this allegation points to the original set of injuries, as it discusses Defendants' alleged duty to avoid causing harm to Mr. Jensen only "[o]n or about January 20, 2012," the night of the sexual assault. Further, every other cause of action only pleads legal conclusions[89] or specifically refers to the sexual assault as the cause of injury.[90] There is simply no support in the Complaint for a separate set of injuries or for the claim that this separate set of injuries is the real basis for the state law causes of action.

Furthermore, even if Mr. Jensen was allowed to amend his complaint to include his "separate injuries" allegations, the amendment would be futile because those added claims would

---

[88] *Id.*

[89] *See, e.g.*, Complaint ¶¶ 58–61 (providing four paragraphs of allegations supporting Plaintiff's third cause of action, which only claim Defendants owed a duty of care to Plaintiff, Defendants breached that duty, Plaintiff suffered damages, and that Defendants' actions show "utter indifference to the consequences of their actions.")

[90] *See, e.g.*, *id.* ¶¶ 80–88 (providing allegations in support of Plaintiff's sixth cause of action, which all address Officer Gale's actions on the night in question, such as stating that "Officer Gale allowed Plaintiff to be sexually assaulted in [his] presence").

not survive a motion for summary judgment for two reasons under the GIA: first, the supposed second set of injuries still "arises out of, in connection with, or results from" the assault by Mr. Weston. Second, even if the second set of injuries did not stem from the assault, the government retains immunity for "infliction of mental anguish."[91]

         a) *The second set of injuries arose out of, in connection with, or resulted from the sexual assault.*

The main thrust of Mr. Jensen's new allegations is that he "was not told immediately that he was sexually assaulted;" instead, he was informed about the sexual assault "over the telephone where there was no supportive environment equipped with health professionals who could provide the support and assistance."[92] Mr. Jensen argues that the police officers' choice of timing for the information is a separate ground for his negligence claim, as it resulted in "psychological injuries," "anxieties of self-worth and doubt," and "caused significant endangerment potentialing [sic] in [Plaintiff] the risk of suicide."[93] Indisputably, sexual assault is a traumatic and horrifying experience for any victim, and there is no doubt that the allegations of psychological injury are sincere. However, Logan City is not liable for that impact.

Mr. Jensen attempts to avoid the GIA's exception for injuries arising out of or related to assault or battery by asserting that the police officer's communication caused injuries separate from those arising out of the assault. Mr. Jensen's position is not supported by Utah law. The Utah Supreme Court stated in *Ledfors v. Emery County School Dist.* that courts "look[] to whether the injury asserted 'arose out of' conduct *or a situation* specifically described in [the

---

[91] Utah Code § 63G-7-301(5)(b).

[92] Houston Affidavit, ¶¶ 6, 7.

[93] *Id.* ¶¶ 9, 10.

GIA].''[94] This means that the GIA "focuses on the conduct or situation out of which the injury arose, not on the theory of liability crafted by the plaintiff or the type of negligence alleged.''[95]

In *Ledfors*, a student complained to his high school principal that two students had assaulted him several times, to which the principal responded that he would "take care of the problem."[96] The principal did not do so and the student was viciously attacked by the two students, leaving him hospitalized.[97] The student's parents sued the school district and the principal for "negligence in failing to supervise" and protect the student.[98] The trial court dismissed their claims, holding that the defendants were immune from suit under the GIA. The Supreme Court affirmed the dismissal in spite of the parents' attempts to characterize their lawsuit under a theory of negligent supervision, because "the Utah Governmental Immunity Act, especially section 63–30–10, focuses on the conduct or situation out of which the injury arose, not on the theory of liability crafted by the plaintiff or the type of negligence alleged."[99] The Utah Supreme Court described the parents' argument as an "attempt[] to evade these statutory categories by recharacterizing the supposed cause of the injury."[100] The underlying source of injury was the assault, not the principal's inappropriate reaction to it.

Even accepting Mr. Jensen's newly asserted facts as true, Mr. Jensen was not injured by communicating with the police without mental health support available. Such a circumstance occurs daily. Instead, Mr. Jensen alleges he was psychologically injured by communicating with the police *about the sexual assault*. Indeed, Mr. Jensen even admits as such, as the purported

---

[94] *Ledfors v. Emery Cnty. Sch. Dist.*, 849 P.2d 1162, 1166 (Utah 1993) (emphasis added).

[95] *Id.*

[96] *Id.* at 1163.

[97] *Id.*

[98] *Id.*

[99] *Id.*

[100] *Id.*

separate injuries arose from "the time, place and manner of how police informed him that he was sexually assaulted."[101] Accordingly, the injury arose out of the sexual assault or, at the very least, arose out of his status as a sexual assault victim. His attempt to introduce to the case a new set of injuries is simply a recharacterization of some of the injuries suffered as a result of the sexual assault (i.e. psychological trauma) resulting solely from the police's reaction instead of Hal Weston's action. This type of recharacterization cannot form the basis for recovery under Utah law.

In an attempt to distinguish his case from *Ledfors* and the other cases cited by Defendants Mr. Jensen  uses the example of an ambulance driver that inadvertently runs over a victim of a car accident.[102] The hypothetical is distinguishable from the present case. Any individual, whether a prior victim of a car accident or not, has a chance of being injured by a negligent ambulance driver. The victim's injuries resulting from the negligent ambulance driver could have occurred whether or not the victim had suffered any prior injury. Mr. Jensen's case, however, is far different. He would not have been emotionally and psychologically injured by speaking with the police unless he had previously been sexually assaulted. Mr. Jensen was not simply placed by The first injury in a situation where the second injury could have occurred, like the ambulance example. Instead, Mr. Jensen's second injury would not have occurred but for the first. Accordingly, Me. Jensen's newly alleged separate injuries "arise out of" the sexual assault and Logan retains its immunity under the GIA.

---

[101] Plaintiff's Memorandum in Opposition to Defendants' Motion to Strike Affidavit of Ronald Houston ("Opposition to Striking Affidavit 29"), docket no. 29, at 4.

[102] Opposition to Judgment on Pleadings 23, at 10.

> b) *Even if the injuries did not arise out of assault, Logan would still retain its immunity under the "infliction of mental anguish" exception.*

Government entities retain immunity for injuries arising out of "infliction of mental anguish."[103] It follows, then, that Logan would still retain immunity under the GIA even as to Mr. Jensen's assertion of psychological trauma from the conduct of the Logan police.

Mr. Jensen attempts to avoid this conclusion by claiming that all of the exceptions to the immunity waiver found in § 63G-7-301(5)(b) are intentional torts, so that injuries arising out of the *negligent* infliction of mental anguish fall within the general waiver of immunity for negligence found in § 63G-7-301(4). In support of this proposition, Mr. Jensen cites to *Van de Grift v. State*, where the Utah Supreme Court refers to the list of exceptions to waiver as "intentional torts."[104] However, Mr. Jensen overstates the Supreme Court's reference. The *Van de Grift* Court was not called upon to definitively determine whether "infliction of mental anguish" refers exclusively to the tort of intentional infliction of mental anguish, and has not yet had the opportunity to rule on the issue. Therefore, reliance on the statement that subsection (5)(b) lists only "intentional torts" is misplaced.

Furthermore, a court must "imbue these subsections [of the GIA] with independent meaning."[105] Subsection (5)(b) cannot have independent meaning if Mr. Jensen's interpretation is adopted. The GIA provides that "each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function."[106] The baseline, then, is that governmental entities are immune from suit for "any" injury—negligent, intentional, or otherwise. This immunity is waived, however, in

---

[103] Utah Code § 63G-7-301(5)(b).

[104] *Van de Grift v. State*, 2013 UT 11, ¶¶ 9, 11, 13, 299 P.3d 1043 ("We clarify that subsection (b) contemplates only the intentional tort of deceit. It appears in a list of other intentional torts.").

[105] *Grappendorf v. Pleasant Grove City*, 2007 UT 84, ¶ 13, 173 P.3d 166.

[106] Utah Code § 63G-7-201(1).

subsection (4), which waives immunity for "any injury proximately caused by a *negligent* act or omission . . . ."[107] Thus, pursuant to subsection (4), immunity is waived for negligently-caused injuries. There is no such waiver for intentional acts. Therefore, because the government cannot be sued for intentional acts, but can be sued for negligent acts pursuant to the waiver in subsection (4), there would be no reason to read subsection (5)(b) as a strict listing of intentional acts, specifically excluding negligent acts. Indeed, the text of subsection (5)(b) refers to "*Subsections (3) and (4)*[,]" indicating that subsection (5)(b) includes negligent acts for which governmental entities retain immunity.

This reading of the statute is supported by the Utah Court of Appeals in *Atiya v. Salt Lake County*.[108] In that case, Dr. Atiya asserted a claim of "intentional infliction of emotional distress" against Salt Lake County. The Court of Appeals held that her claim was barred under the GIA because the statute had only waived immunity for 'injury proximately caused by a *negligent* act or omission,'" and she had only alleged damages arising from intentional acts. Thus, the Court of Appeals recognized that Utah governmental entities are already immune from liability arising from intentional torts. The court also noted that "even if Dr. Atiya had alleged that her injuries arose from a negligent act . . . , [the GIA negligence waiver] still would not provide relief in this case because of an explicit exception to the waiver provided for by that section for injuries arising out of 'infliction of mental anguish.'"[109] Thus, under the plain language of the statute and the supporting opinion of the Court of Appeals, the exception for "infliction of mental anguish" would cover even negligent infliction of emotional distress. As a result, even if Mr. Jensen's "separate set" of injuries did not arise out of the underlying assault in this case, but was instead a

---

[107] *Id.* § 63G-7-301(4) (emphasis added).

[108] 852 P.2d 1007 (Utah Ct. App. 1993).

[109] *Id.* at 1011, n.6.

direct claim for infliction of mental anguish as Mr. Jensen argues, his claim is still barred under the GIA.

Accordingly, as the GIA bars Mr. Jensen's state law negligence claims against Logan and Officer Gale, the second through sixth causes of action must be dismissed with prejudice.

### SUMMARY OF MOTION AND CASE

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings is granted in its entirety, and all state law claims—the second, third, fourth, fifth, and sixth causes of action—are dismissed with prejudice as to all parties. The only remaining claims and parties are Plaintiff's first cause of action, a § 1983 claim asserted against Officer Gale and Logan, and the seventh cause of action, requesting punitive damages against Officer Gale.

### MOTIONS FOR SUMMARY JUDGMENT 41 AND 45 – CLAIMS 1 AND 7

Defendants' Motion for Summary Judgment 41 seeks to dismiss the first and seventh causes of action. Mr. Jensen opposed that motion[110] and filed his Motion for Counter Summary Judgment 45 as to the first cause of action. For the reasons discussed below, Defendants' Motion for Summary Judgment 41 is GRANTED and Plaintiff's Motion for Counter Summary Judgment 45 is DENIED.

### STANDARD OF REVIEW

The same standard of review applies as was stated in the prior section.

### UNDISPUTED MATERIAL FACTS

The facts set forth in the two motions and memoranda do not show any genuine dispute of material fact. Accordingly, the following facts are accepted as undisputed for purposes of these motions. Paragraphs 1 through 17 are taken from Defendants' Motion for Summary

---

[110] Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment and Motion for Counter Summary Judgment and Memorandum in Support of Motion for Counter Summary Judgment ("Summary Judgment Opposition 43"), docket no. 43, filed June 9, 2014.

Judgment,[111] and paragraphs 18 through 19 are taken from Plaintiff's Memorandum in Opposition.[112]

1.      On January 20, 2012, Logan City Police were dispatched to investigate reports of an intoxicated male trying to enter a gathering near 700 North 800 East in Logan, Utah.

2.      Upon arrival at 700 North 800 East, Officer Soelberg found Mr. Jensen intoxicated to the point that he could not stand up or walk without stumbling.

3.      Mr. Jensen was arrested, handcuffed, and charged with trespassing, public urination, and intoxication.

4.      When Officer Gale arrived, he observed Mr. Jensen to be handcuffed and in custody.

5.      As Officer Gale was transporting Mr. Jensen to the Cache County Jail, Mr. Jensen passed out and, upon arrival at the jail, Officer Gale was unable to awaken him.

6.      Officer Gale contacted emergency medical personnel who responded and transported Mr. Jensen to the Logan Regional Hospital ("LRH") while Officer Gale followed separately.

7.      Upon arrival at LRH, Mr. Jensen was placed on a gurney and taken into an examination room. While members of the hospital staff were treating Mr. Jensen, Officer Gale went to his car to get his computer; thereafter, he located himself at the nurses' station outside Mr. Jensen's room.

8.      While stationed outside Mr. Jensen's room, Officer Gale observed several members of the hospital staff coming and going from Mr. Jensen's room, including Hal Weston, a critical care technician employed by LRH.

---

[111] Motion for Summary Judgment 41, at 5–7.

[112] Summary Judgment Opposition 43.

9.      On January 21, 2012, at approximately 12:36 a.m. Mr. Weston entered Mr. Jensen's room to obtain a urine sample by catheterization.

10.     The curtain to Mr. Jensen's room was pulled closed and Officer Gale was unable to see Mr. Weston and Mr. Jensen.

11.     At 12:45 a.m., Officer Gale pulled back the curtain to check on Mr. Jensen and observed Mr. Weston with the unconscious Mr. Jensen's penis in his mouth.

12.     Shocked by what he saw, Officer Gale closed the curtain and stepped away to collect his thoughts.

13.     Approximately one minute later, Mr. Weston left the room carrying a urine sample.

14.     After obtaining the urine sample and delivering it to the laboratory, Mr. Weston went off shift.

15.     Mr. Jensen was intoxicated and unconscious during the assault and has no memory of it.[113]

16.     After observing Mr. Weston's criminal misconduct, Officer Gale contacted his supervising sergeant, who then dispatched Detective Bodily to investigate.

17.     Mr. Weston was convicted of aggravated sexual assault and is serving five years to life in prison.

18.     At the time of the actions committed against Mr. Jensen, there existed no Logan City Police Department policy regarding the observation of those in the custody of the Logan City Police Department while they received medical attention.[114]

---

[113] Although Plaintiff has previously attempted to dispute the assertion that he was unconscious, he seems to have abandoned that effort for the present motions. *Compare* Opposition to Motion for Judgment on the Pleadings 23, at 2 ("Plaintiff was in and out of consciousness . . . .") *with* Summary Judgment Opposition 43, at 5 (admitting that Plaintiff was "intoxicated and unconscious during the assault and has no memory of it").

19.    At the time of the actions committed against Mr. Jensen, there existed no Logan City Police Department policy regarding providing protection to a victim or alleged victim to assure that no further assault takes place.[115]

DISCUSSION OF MOTIONS

The cross-motions focus on only two issues. The first is whether Officer Gale is entitled to qualified immunity, i.e., whether Officer Gale violated Mr. Jensen's clearly established rights by failing to prevent or stop Mr. Weston from assaulting Mr. Jensen. The second issue is whether Logan can be held directly liable under §1983 by failing to establish any policies or training regarding the protection and care that a police officer should provide to a person in his or her custody while that person is receiving medical care.

**Officer Gale Is Entitled to Qualified Immunity.**

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[116] Whether an individual is protected by qualified immunity depends on a two-step process defined in *Saucier v. Katz*:[117] "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right."[118] "Second, . . . the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."[119] Although the Supreme Court once held that the constitutional right prong "*must* be the initial inquiry in every

---

[114] Summary Judgment Opposition 43, at 6, ¶ 4.

[115] *Id.* at 6, ¶ 5.

[116] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (internal quotation marks omitted).

[117] 533 U.S. 194 (2001).

[118] *Pearson*, 555 U.S. at 232. (citations omitted) (citing *Saucier*, 533 U.S. at 201).

[119] *Pearson*, 555 U.S. at 232.

qualified immunity case,"[120] it has since removed that requirement, allowing courts to "determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case."[121]

    Mr. Jensen has asserted that Officer Gale violated Mr. Jensen's constitutional liberty interests by failing to both "prevent a breach of Mr. Jensen's bodily integrity" and "to prevent known criminal misconduct from continuing by not taking action to stop the situation."[122] Both the failure to prevent the assault from occurring and the failure to stop the crime in progress are in essence a claim that Officer Gale breached a constitutional duty to protect Mr. Jensen. However, the "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause"[123] unless the "special relationship" doctrine or the "danger creation" theory applies.[124] Plaintiff has not argued that the "danger creation" exception applies, and the argument would be unavailing if he did make it.[125]

    The only exception that might apply on these facts is the "special relationship" doctrine. It presents two issues: (1) whether it is clearly established that the "special relationship" doctrine

---

[120] *Id.* (quoting *Saucier*, 533 U.S. at 201) (emphasis in original) (internal quotation marks omitted).

[121] *Pearson*, 555 U.S. at 242.

[122] Summary Judgment Opposition 43, at 9.

[123] *Deshaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 197 (1989).

[124] *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995) ("While state actors are generally only liable under the Due Process Clause for their own acts and not for private violence, . . . there are two recognized . . . exceptions to this rule: (1) the special relationship doctrine; and (2) the 'danger creation' theory." (citations omitted)).

[125] "In order to succeed on a danger-creation claim a plaintiff must meet all elements of a six-part test: (1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant['s] conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking." *Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1173 (10th Cir. 2013) (quoting *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1281 (10th Cir. 2003)). Mr. Jensen's allegations would fail at the very least to demonstrate the fourth element: that the risk was obvious or known.

applies to arrestees and then, if it does, (2) whether the failure to prevent or intervene in the felonious assault of an arrestee is a clearly established violation of that doctrine.

(1) Officer Gale had a clearly established duty to assume some responsibility for Mr. Jensen's safety while Mr. Jensen was in his custody under the "special relationship" doctrine.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."[126] This "affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf."[127] "[I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means."[128] Thus, a state actor can be held personally liable for injuries caused by a third party if the state had imposed a limitation on the victim's freedom to act.

The parties dispute whether the "special relationship" exception applies in this case. It is undisputed that "Mr. Jensen was arrested [and] handcuffed." Mr. Jensen remained in handcuffs while being driven to the jail in Officer Gale's police car and during the subsequent assault. In his deposition, Officer Gale agreed that "Mr. Jensen remained in [Officer Gale's] custody" at the hospital.[129] Defendants argue that these facts do not end the analysis. Instead, "the inquiry is

---

[126] *DeShaney*, 489 U.S. at 199-200.

[127] *Id.* at 200.

[128] *Id.*

[129] Deposition of James Gale (November 6, 2013) ("Gale Deposition 43-1"), docket no. 43-1, 18:10–15.

whether the restraint placed on Mr. Jensen prevented him from acting on his own behalf."[130]

According to Defendants, Mr. Jensen had voluntarily rendered himself "intoxicated and

unconscious," so the fact that he also happened to be in handcuffs during the assault is irrelevant.

Defendants have cited no authority for the argument other than the language of the Supreme

Court discussed above.

An analogous factual scenario found in *Youngberg v. Romeo* was discussed in Justice

Brennan's dissent in *DeShaney* .[131] Mr. Romeo "ha[d] the mental capacity of an 18-month-old

child, with an I.Q. between 8 and 10," who was "involuntarily committed to a state

institution."[132] The majority in *DeShaney* cited *Youngberg* as establishing "that when the State

takes a person into its custody and holds him there against his will, the Constitution imposes

upon it a corresponding duty to assume some responsibility for his safety and general well-

being."[133] Justice Brennan's dissent disagreed with the *DeShaney* majority's characterization of

the *Youngberg* facts and the meaning of *Youngberg* opinion:

> [T]he Court's exclusive attention to state-imposed restraints of the individual's
> freedom to act on his own behalf . . . suggests that it was the State that rendered
> Romeo unable to care for himself, whereas in fact–with an I.Q. of between 8 and
> 10, and the mental capacity of an 18-month-old child . . .—he had been quite
> incapable of taking care of himself long before the State stepped into his life.[134]

Justice Brennan's criticism makes it clear that under the *DeShaney* majority's opinion, "the only

fact that seems to count . . . is direct physical control."[135] Under *Youngberg,* it does not matter if

---

[130] Reply Memorandum in Support of Motion for Summary Judgment of Defendants James Gale, Gary Jensen, Logan City PD and City of Logan ("Defendants' Summary Judgment Reply 47") at 11, docket no. 47, filed June 23, 2014.

[131] 457 U.S. 307 (1982).

[132] *Id.* at 309.

[133] *DeShaney*, 489 U.S. at 189–190.

[134] *Id.* at 209 (Brennan, J., dissenting) (citations and internal quotation marks omitted).

[135] *Id.*

an individual is already incapacitated when the state intervenes. If the state actor took "action involving force, the threat of force, or a show of authority, with the intent of exercising dominion and control over the person," due process protections are triggered.[136]

Arresting, handcuffing, and placing an individual in a police car in order to drive him to jail are affirmative acts "involving force, the threat of force, or a show of authority" that restrained Mr. Jensen's freedom. There is no dispute that Officer Gale acted "with the intent of exercising dominion and control" over Mr. Jensen. In interpreting *DeShaney*, the Tenth Circuit stated that "arrest . . . [is an] example[] where the State's 'affirmative act' of exercising physical control and dominion over the person constitutes a deprivation of liberty triggering substantive due process protection."[137] Officer Gale exercised "direct physical control" and limited Mr. Jensen's freedom to act on his own behalf. Officer Gale personally and Defendants collectively agreed that Mr. Jensen was "in custody" after being arrested and while he was at the hospital.[138] The limitations Mr. Jensen had already imposed upon himself through his alcohol consumption did not change the facts.

The affirmative acts of arresting, handcuffing, and placing Mr. Jensen in Officer Gale's police car create a "special relationship" in which Officer Gale had a duty to provide some level of protection to Mr. Jensen. The next question is whether the failure to prevent or intervene in the assault is a clearly established violation of that duty.

---

[136] *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 924 (10th Cir. 2012).

[137] *Id.* at 923; *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("The Due Process Clause, however, does require the responsible government or governmental agency to provide medical care to persons . . . who have been injured *while being apprehended* by the police." (emphasis added)).

[138] *See* Motion for Summary Judgment 41, at 6, ¶ 4; Summary Judgment Opposition 43, at 3, ¶ 6 ("Plaintiff admits that Officer Gale cause him to be transported to LRH after he was handcuffed and in Officer Gale's custody.").

(2) Officer Gale did not violate Mr. Jensen's clearly established rights by failing to prevent or immediately intervene in the assault.

   a) *The extent of a police officer's duty to protect an arrestee receiving medical treatment under the "special relationship" doctrine has not been clearly established.*

Having established that the "special relationship" doctrine imposed upon Officer Gale the "duty to assume some responsibility for [Mr. Jensen's] safety and general well-being,"[139] the next issue is whether Officer Gale violated his duty and, consequently, Mr. Jensen's constitutional rights. However, the extent of responsibility assumed by Gale has not been made clear by either the Supreme Court or the Tenth Circuit.

The best guidance as to the contours of this duty comes from *DeShaney*. There, the U.S. Supreme Court held that the State must "provide for [an individual's] basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety."[140] Mr. Jensen has repeatedly cited to the Supreme Court's generalized language of "some responsibility" and "reasonably safety" as clearly establishing Officer Gale's duty to protect Plaintiff "from both initial assaults and continued assaults after the situation is made known to the officer."[141] However, neither the Supreme Court nor the Tenth Circuit has actually adopted Mr. Jensen's interpretation. Instead, the Supreme Court's language only establishes the existence of an abstract right to receive some level of protection.

Mr. Jensen relies on the Supreme Court's general language in *DeShaney* to argue that Officer Gale's conduct in this specific and unique circumstance violated a clearly established

---

[139] *DeShaney*, 489 U.S. at 200.

[140] *Id.*

[141] Plaintiff's Reply to Defendants' Opposition to Motion for Counter Summary Judgment at 3, docket no. 50, filed July 23, 2014.

right. But "[o]n a very general level, all constitutional rights are clearly established."[142] Allowing allegations of "abstract rights" to remove an officer's qualified immunity without factual similarity between cases "would destroy the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," and provide no guidance for public officials to be able to "anticipate when their conduct may give rise to liability for damages."[143] Thus, the Tenth Circuit requires "substantial correspondence between the conduct in question and prior law establishing that defendants' actions were clearly prohibited."[144] Although Mr. Jensen "is not required to show that the very conduct in question has previously been held unlawful," he is "required to demonstrate the unlawfulness was 'apparent' in light of established law."[145]

Neither side has provided a Supreme Court or Tenth Circuit decision that provides such factual correspondence.[146] The only case cited by Mr. Jensen other than *DeShaney* is *Liebson*.[147] That case dealt with a librarian who was employed to provide library services to the inmates in a penitentiary's maximum security unit.[148] The penitentiary subsequently changed the library

---

[142] *Horstkoetter v. Dept. of Pub. Safety*, 159 F.3d 1265, 1278 (10th Cir. 1998); *see also Anderson v. Creighton*, 483 U.S. 635, 639–640 (1987) ("For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. . . . But if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone.").

[143] *Anderson*, 483 U.S. at 639.

[144] *Liebson v. N. M. Corr. Dept.*, 73 F.3d 274, 278 (10th Cir. 1996).

[145] *Baptiste v. J.C. Penny Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998).

[146] "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point." *Roska v. Peterson*, 238 F.3d 1230, 1248 (10th Cir. 2003).

[147] 73 F.3d 274.

[148] *Id.* at 275.

hours and the schedule of the officer assigned to oversee the library.[149] After this change, the librarian "was kidnapped, held hostage, and sexually assaulted by an inmate library assistant."[150]

The *Liebson* facts, however, do not provide enough congruity to this case to provide any meaningful comparison. In *Liebson,* the librarian was not arrested or otherwise in the state's custody. The court specifically noted that "Ms. Liebson's presence in the prison library . . . was completely voluntary."[151] Thus, the "special relationship" doctrine was not even implicated. *Liebson*, therefore, does not satisfy Plaintiff's burden of demonstrating that the law was clearly established.

Indeed, it is difficult to find any case on point because most cases considering the "special relationship" doctrine's duty to protect from injuries caused by third parties are based on assaults perpetrated against inmates or foster children. Prison assault cases are unhelpful as they implicate the Eighth Amendment, which does not apply in this case.[152] Cases dealing with foster children are more similar in that the state has assumed direct control over the individual and has compelled the child to be in a certain location, but these cases are dissimilar because the duties of state child protective services differ from those of police officers.[153] Thus, the extent of the protection owed to an arrestee under the "special relationship" doctrine as it applies to

---

[149] *Id.*

[150] *Id.*

[151] *Id.* at 276.

[152] *See Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 307 (10th Cir. 1985) ("[T]he Eighth Amendment does not apply until after an adjudication of guilt."); *Berry v. City of Muskogee, Okla.*, 900 F.2d 1489, 1494 (10th Cir., 1990) ("[A]ctions which are protected under specific constitutional provisions should be analyzed under those provisions and not under the more generalized provisions of 'substantive due process.'").

[153] *See Schwartz v. Booker*, 702 F.3d 573, 580–81 (10th Cir. 2012) ("The special relationship triggers a continuing duty which is subsequently violated if a state official knew of the asserted danger to a foster child or failed to exercise professional judgment with respect thereto, and if an affirmative link to the injuries the child suffered can be shown." (alterations in original) (quoting *Yvonne L. ex rel. Lewis v. N. M. Dept. of Human Servs.*, 959 F.2d 883, 890 (10th Cir. 1992)) (internal quotation marks omitted)).

individuals in police custody has not yet been "clearly established." This justifies granting Officer Gale's motion on the second prong of the *Saucier* analysis.

> b) *Tenth Circuit principles indicate that no constitutional violation occurred.*

As noted previously in this Memorandum Decision and Order,[154] under the *Saucier* analysis for qualified immunity, a court "must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."[155] Here, it is not "clearly established" that a police officer has a constitutional duty to protect an arrestee who is receiving medical care from trained medical professionals. Therefore, Officer Gale is entitled to qualified immunity. It is apparent from the guiding principles provided by the Tenth Circuit that the "special relationship" doctrine does not encompass Mr. Jensen's situation.

Whether an officer's actions satisfy his duties under the "special relationship" doctrine is evaluated under a "shocks the conscience" standard.[156] Tenth Circuit's decision in *Radecki v. Barela* clarified the conduct that can satisfy this standard.[157] In that case, a police officer solicited the help of a bystander to help find and later attempt to subdue a man suspected of assaulting a woman.[158] After the suspect suddenly wrested the officer's gun away from him, the police officer fled to the bushes while the bystander was shot and killed.[159] The bystander's estate brought suit against the officer under the "danger creation" theory of liability, which

---

[154] *See* footnote 117 and accompanying text.

[155] *Pearson*, 555 U.S. at 232 (citing *Saucier*, 533 U.S. at 201 ).

[156] *See Radecki v. Barela*, 146 F.3d 1227, 1230 (10th Cir. 1998) (discussing the two exceptions to the *DeShaney* rule, the special relationship doctrine and danger creation theory, and holding that "[t]he 'shocks the conscience' standard applies to both"); *Johnson ex rel. Estate of Cano v. Holmes*, 455 F.3d 1133, 1141 (10th Cir. 2006) (affirming that the "shocks the conscience" test "appl[ies] to 'special relationship' claims").

[157] *Radecki*, 146 F.3d 1227 (10th Cir. 1998).

[158] *Id.* at 1228.

[159] *Id.*

39

applies the same "shocks the conscience" standard as the "special relationship" doctrine.[160] In *Radecki* a police officer's action changed an individual's situation and increased the risk of harm to the individual. Accordingly, its discussion of a plaintiff's burden under the "shocks the conscience" standard is instructive.

*Radecki* held that two distinctions must be considered in determining whether a government official's conduct "shocks the conscience": First, courts must "distinguish between emergency action and actions taken after opportunity for reflection," with courts obligated to "give great deference to the decisions that necessarily occur in emergency situations."[161] These emergency situations are "unforeseen circumstances" that "demand an officer's instant judgment" with "no time for deliberation."[162] With that in mind, courts must then decide where on "the spectrum of culpability" the conduct lies.[163] On one end is tort liability, which is insufficient for a §1983 claim; at the "opposite, far side of that spectrum is conduct in which the government official intended to cause harm and in which the state lacks any justifiable interest."[164] The court held that "[i]n emergency situations, only conduct that reaches that far point will shock the conscience and result in constitutional liability."[165] Only "[w]here the state actor has the luxury to truly deliberate about the decisions he or she is making, something less than unjustifiable intent to harm, such as calculated indifference, may suffice to shock the conscience."[166] Calculated indifference exists when an official "ha[s] time to make unhurried judgments," with "the chance for repeated reflection, largely uncomplicated by the pulls of

---

[160] *Id.* at 1228–29.

[161] *Id.* at 1232.

[162] *Id.* at 1231, 1232 (quoting *City of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998)).

[163] *Radecki*, 146 F.3d at 1232.

[164] *Id.*

[165] *Id.*

[166] *Id.*

competing obligations."[167] Such "extended opportunities to do better" may rise to the level of conscience-shocking indifference when they are "teamed with protracted failure even to care."[168] In *Radecki*, the court found that the police officer "Deputy Barela was confronted with the kind of instantaneous judgment call that is so often required of law enforcement personnel" and "had no time for deliberation.""[169] and, as the plaintiffs had not alleged or shown that the officer acted with the intent to harm the bystander, there could be no constitutional liability.

There are two instances of Officer Gale's conduct that Plaintiff alleges violated his constitutional right. The first was failing to prevent the sexual assault from occurring in the first place. The second is failing to intervene in the ongoing assault when he witnessed it. In the first instance of conduct Mr. Jensen does not allege that Officer Gale had time for "repeated reflection" on his duty to protect Plaintiff. However, even assuming that he did, there is simply no evidence of a "protracted failure even to care." Officer Gale assumed responsibility for Plaintiff's well-being by ensuring that he was transported to a hospital and received medical care from trained personnel. Officer Gale chose to remain with Mr. Jensen for several hours and "[kept] an eye on him."[170] Although Officer Gale did not position himself in the room with Mr. Jensen, he did place himself at "the nurses' station . . . just outside his room," where he could observe the individuals who entered and left Mr. Jensen's room.[171] These individuals were trained medical professionals. These facts do not suggest, even in a light most favorable to Plaintiff, that Officer Gale made no effort to protect Mr. Jensen or was indifferent to Mr.

---

[167] *Lewis*, 523 U.S. at 853.

[168] *Id.*

[169] *Radecki*, 146 F.3d at 1232.

[170] Gale Deposition 41-1, 32:14.

[171] *Id.* at 9:23–10:21.

Jensen's health and safety. Accordingly, Officer Gale's conduct in failing to prevent the assault does not shock the conscience.

In much the same way, Officer Gale's failure to intervene in the assault does not rise to a conscience-shocking level. This is not to say that his hesitation or outright failure to intervene is commendable or desirable. It simply recognizes that Officer Gale was suddenly confronted with an unexpected and unforeseeable situation where he was called upon to make an instantaneous judgment as to how to respond. He had no time for deliberation, testifying that he "was in shock at what [he] had just seen" and was "trying to collect [his] thoughts."[172] Because Officer Gale was confronted with an emergency situation, the ultimate inquiry is whether Officer Gale's actions manifested an "intent to cause harm."

Again, Mr. Jensen has not alleged that Officer Gale intended to cause any injury to him. Instead, Mr. Jensen specifically alleged that Officer Gale's actions only "manifested a knowing and reckless indifference toward" Mr. Jensen rights.[173] This is insufficient as the Tenth Circuit expressly stated that "calculated indifference" is required to meet the "shocks the conscience" standard where the officer has sufficient time to "truly deliberate about the decisions he or she is making."[174]

Mr. Jensen's conclusory allegation  that Officer Gale intended to cause harm to Mr. Jensen is contradicted by the fact that the officer ensured Mr. Jensen was transported to a facility where he could receive proper medical care by qualified health professionals when he was unconscious and nonresponsive, positioned himself outside the private area deferring to the medical personnel's need to work, and, after witnessing the assault and gathering his thoughts,

---

[172] Gale Deposition 43-1, 27:7–25.

[173] Complaint ¶ 50.

[174] *Radecki*, 146 F.3d at 1232.

he acted in an appropriate manner by contacting hospital security and his supervising officer to respond to the assault. Ultimately, "regardless of whether [Officer Gale's] behavior offended the reasonableness held up by tort law or the balance struck in law enforcement's own codes of sound practice, it does not shock the conscience, and [Officer Gale is] not called upon to answer for it under § 1983."[175]

Although the full extent of the duty to protect that arises under the "special relationship" doctrine has not been clearly established, it is clear that, under the established "shocks the conscience" standard, no constitutional violation occurred. Accordingly, Mr. Jensen's first cause of action as to Officer Gale must be dismissed with prejudice. Officer Gale is entitled to qualified immunity. Further, because there are no remaining claims against Officer Gale to support Mr. Jensen's seventh cause of action for punitive damages, that claim must also be dismissed with prejudice.

**Logan City Is Not Liable Under § 1983.**

Mr. Jensen's first cause of action also asserts a §1983 claim against Logan City.  As discussed in the analysis of claims against Chief Jensen, because "[r]espondeat superior or vicarious liability will not attach under § 1983,"[176] the cause of action must be construed as attempting to impose direct liability on the City. Although Plaintiff's Complaint is not entirely clear as to the basis for this claim, his Summary Judgment Opposition 43 argues that Logan failed to "train officers in the constitutional requirements of how to ensure the safety and protection of those in their custody."[177] Thus, Logan's policies and training, or lack thereof, form the basis of Mr. Jensen's § 1983 claim.

---

[175] *Id.* (quoting *Lewis*, 523 U.S. at 855).

[176] *City of Canton*, 489 U.S. at 385.

[177] Summary Judgment Opposition 43, at 15.

(1) Legal Standards for a § 1983 Claim Against a Municipality for Failure to Train.

Municipality liability under § 1983 requires a plaintiff to prove three elements: (a) a city policy or custom; (b) culpability; and (c) causation.[178]

### a)  Legal Standard for "Policy or Custom"

First, "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."[179] The U.S. Supreme Court in *City of Canton v. Harris* established that a municipality's failure to adequately train police officers, or its failure to adopt proper training policies, can constitute a city "policy" for purposes of § 1983 in certain circumstances.[180]

### b)  Legal Standard for "Culpability"

Identifying a city policy is not enough by itself, however, to impose liability. The plaintiff must also "show that the municipal action was taken with the requisite degree of culpability."[181] In the context of a failure to train claim, a plaintiff must demonstrate that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."[182] "Deliberate indifference" is established when a municipality "actually [has] a policy of not taking reasonable steps to train its employees," an unlikely occurrence, or when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."[183]

---

[178] *Bd. of Cnty. Com'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403-04 (1997).

[179] *Id.* at 403.

[180] *City of Canton*, 489 U.S. at 388 ("[T]he inadequacy of police training may serve as the basis for §1983 liability.").

[181] *Brown*, 520 U.S. at 404.

[182] *City of Canton*, 489 U.S. at 388.

[183] *Id.*

"Deliberate indifference" in the context of municipality liability was examined in *Barney v. Pulsipher*.[184] There, the Tenth Circuit Court of Appeals stated that "[t]he deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."[185] The court proceeded to discuss two ways of establishing notice. The most frequent method is "by proving the existence of a pattern of tortious conduct."[186] The other method of establishing that a municipality had notice applies only "[i]n a narrow range of circumstances," and allows "deliberate indifference [to] be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations."[187]

In *Barney*, two former inmates who were sexually assaulted by their jailer brought § 1983 actions against the jailer, county, sheriff, and county commissioners.[188] Among the claims asserted against the county was an allegation that the defendants' failure to adequately train jailers violated their constitutional rights.[189] The jailer had "completed a state certified basic peace officer training program and a correctional officer course," and was trained on "offenders' rights, staff/inmate relations, sexual harassment, and cross-gender search and supervision."[190] Because "Plaintiffs ha[d] not come forward with evidence pertaining to the adequacy of the

---

[184] 143 F.3d 1299, 1307–08 (10th Cir. 1998).

[185] *Id.* at 1307.

[186] *Id.*

[187] *Id.* at 1307–08.

[188] *Id.* at 1303.

[189] *Id.* at 1306.

[190] *Id.* at 1308.

instruction [the jailer] received in these courses," the court "ha[d] no reason to conclude that [the jailer] received constitutionally deficient training."[191]

The Tenth Circuit came to a similar conclusion in *Carr v. Castle*, in which two police officers shot and killed a man who was attacking them with a non-lethal weapon.[192] The man's estate brought suit against the police officers and Oklahoma City. One of the personal representative's claims was that the city had failed to implement training specific to the scenario that had occurred, i.e., training police officers on when deadly force is appropriate when confronted with a non-lethal weapon.[193] The court rejected this argument, stating that the training was sufficient as it covered "different situations in which deadly force would or would not be justified."[194] Further, the court stated that "it distorts the record . . . to refer only to certain portions of the training to the neglect of the entire training program."[195]

### c)   Legal Standard for "Causation"

The final prong of the test, causation, requires a plaintiff to show that "a causal link between the municipal action and the deprivation of federal rights"—in other words, that "the municipality was the 'moving force' behind the alleged injury."[196] In the context of an alleged failure to train, "the identified deficiency in a city's training program must be closely related to the ultimate injury, so that it actually caused the constitutional violation."[197] The Tenth Circuit has "highlighted the importance of the 'closely related' requirement, ruling that a general lack of

---

[191] *Id.*

[192] *Carr v. Castle*, 337 F.3d 1221, 1224–25 (10th Cir. 2003).

[193] *Id.* at 1225.

[194] *Id.* at 1231 ("Carr does not raise a genuine issue of material fact by . . . [relying] on the failure of the Firearms Training Simulator . . . to have shoot/don't shoot scenarios where officers are confronted with non-lethal weapons.").

[195] *Id.*

[196] *Brown*, 520 U.S. at 404.

[197] *Carr*, 337 F.3d at 1231 (quoting *Brown v. Gray*, 227 F.3d 1278, 1290 (10th Cir. 2000)).

training is insufficient."[198] Causation is more likely to exist when officers are "trained to do . . . the wrong thing" and less likely when "officers are not given enough training to know the correct response to a dangerous situation."[199]

In *Barney*, in deciding whether a causal connection existed between inadequate training of jailers and the sexual assault of two inmates, the Tenth Circuit was "not persuaded that a plainly obvious consequence of a deficient training program would be the sexual assault of inmates."[200] Similarly, in *Carr*, the court rejected the claim that the failure to train officers to deal with a specific scenario was the cause of the injury:

> Even if . . . the Officers [were not] trained to know how to react exactly to an individual who had just thrown a four-inch piece of concrete, one thing is certain: They were not trained by the City to shoot him repeatedly in the back after he no longer posed a threat.[201]

Because the city had provided adequate basic training related to the use of deadly force, and had not trained the officers to act unconstitutionally, it could not be held liable.

Both the Tenth Circuit and the Supreme Court consistently warn against engaging in a post hoc analysis, i.e., relying on occurrence of an injury caused by a police officer to establish both culpability and causation.[202] A municipality "may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees."[203] The Supreme Court cautioned that it is not enough to simply point out "[t]hat a particular officer may be unsatisfactorily trained" or "that an injury or accident could have been

---

[198] *Carr*, 337 F.3d at 1231.

[199] *Id.* (quoting *Allen v. Muskogee, Okl*, 119 F.3d 837, 844 (10th Cir. 1997).

[200] *Barney*, 143 F.3d at 1308.

[201] *Carr*, 337 F.3d at 1232.

[202] *See id.* at 1231 ("All of Carr's other assertions of alleged failure to train or inadequate training flunk the causation requirement, for they uniformly partake of the post hoc, ergo propter hoc fallacy rather than providing any evidence how the training (or lack thereof) actually resulted in the excessive force.")

[203] *Barney*, 143 F.3d at 1307.

avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct."[204] Such arguments "could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable to respond properly to the usual and recurring situations with which they must deal."[205] Simply put, even "adequately trained officers occasionally make mistakes."[206] Ultimately, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."[207]

  (2) Mr. Jensen has failed to allege that Logan's police officer training program is deficient or that any deficiency caused his injuries.

    a) *Logan's lack of training on police officers' duty to protect arrestees receiving medical attention is a "policy" or "custom."*

Mr. Jensen has established that Logan had "no policies regarding the protection and care that an officer was to provide to a person in his/her custody while that person was receiving medical attention at a hospital."[208] Under the standards described above, this satisfies the first prong of the failure to train analysis.

    b) *The failure to train police officers to protect arrestees receiving medical attention does not constitute deliberate indifference on the part of Logan.*

Mr. Jensen has not alleged that Logan has adopted a specific policy to refuse to train police officers. Instead, he has alleged that Logan's failure to provide specific police training amounts to deliberate indifference. Thus, under *Barney*, he must allege that Logan had actual or constructive notice that the alleged lack of training is "substantially certain to result in a

---

[204] *City of Canton*, 489 U.S. at 390–91.

[205] *Id.*

[206] *City of Canton*, 489 U.S. at 391.

[207] *Brown*, 520 U.S. at 405.

[208] Summary Judgment Opposition 43, at 14.

constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."[209] But he has not provided any evidence of the "existence of a pattern of tortious conduct."[210] Accordingly, Mr. Jensen can only succeeds if is claim is in that "narrow range of circumstances" where deliberate indifference can be imputed to the city because a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of its alleged failure to train police officers. Mr. Jensen must satisfy the "rigorous standards of culpability" set forth above in order to succeed.

Although Mr. Jensen is likely correct that "the need to train officers in the constitutional requirements of how to ensure the safety and protection of those in their custody can be said to be 'so obvious' that failure to do so should properly be characterized as deliberate indifference,"[211] that is not the type of training which is at issue.

Under Utah Code § 53-6-205, Utah peace officers must complete a basic training course at a certified academy and pass a certification examination. Mr. Jensen has not alleged that Logan deviates from these requirements or that the training received did not cover how officers should treat individuals in their custody in usual and recurring situations. As in *Barney*, Mr. Jensen has provided no reason to assume that this training was inadequate. Indeed, Officer Gale's testimony in response to whether he had received training "regarding providing protection to the victim or alleged victim to assure that no further assault takes place," was "obviously, in the academy setting, they provide general training about it."[212]

---

[209] *Barney*, 143 F.3d at 1307.

[210] *Id.*

[211] Summary Judgment Opposition, at 15.

[212] Gale Deposition 43-1, 83:7–24.

Logan police officers were trained in different situations in which individuals would need to be protected. The training provided to Logan police officers includes protecting the individual from injuring themselves (such as by falling) and protecting the individual from third parties (such as being attacked by someone in a crowd).[213] It appears that Logan's training policies include training police officers on protecting those in their custody from foreseeable dangers, including dangers from third parties. Officer Gale was not trained to handle this specific circumstance because "it was so unusual," and he acted the way he did because he "didn't believe [Mr. Jensen] was in danger of being attacked by any hospital staff."[214] Thus, Mr. Jensen's claim really boils down to an argument that Logan police officers should be trained to foresee and anticipate attacks on individuals in their custody by medical staff after the individuals have been appropriately delivered to the hospital.

Logan's failure to train police to protect individuals in their custody from medical personnel does not constitute deliberate indifference. The risk of assault by medical personnel is not "plainly obvious."[215] Thus, although Mr. Jensen has demonstrated that Logan has no policy of providing training that would cover a terrible situation like the one that he endured, he has not shown that such a situation is a "highly predictable" result of Logan's failure to implement such training.

Further, a policy that requires police officers to oversee potentially invasive medical procedures performed on hospitalized arrestees might implicate and potentially infringe upon the

---

[213] *See id.*

[214] *Id.* at 19:16–19, 83:17–24.

[215] *See J.H.*, 840 P.2d at 126 (holding that the danger of a police officer sexually assaulting a minor is not foreseeable).

patient's right to privacy.[216] Indeed, such might have been the case here, where the procedure

that Mr. Jensen argues Officer Gale should have monitored was a catheterization in order to

obtain a urine sample. Further, requiring a police officer, who typically lacks in-depth training in

providing health care, to personally monitor trained and qualified medical personnel in the

performance of their duties could impede the medical personnel, violate other laws or hospital

policy and thus violate the officer's duty to ensure that arrestees receive basic medical care. It is

difficult to construe Logan's lack of a policy on this issue as demonstrating deliberate

indifference to individuals' rights.

*c)  The lack of training is not the cause of Plaintiff's injuries.*

Having failed to show deliberate indifference, Mr. Jensen also fails to prove a causal

connection between the city's policy on training and his injury. He argues that the injury to Mr.

Jensen would have been avoided if Officer Gale had been trained to protect a person in custody

when that person is taken to a hospital.[217] This is the exact type of logic rejected by the Tenth

Circuit in *Carr*.[218] By arguing that the fact of the injury proves the causation, Mr. Jensen does

not establish causation. Instead, Mr. Jensen must show that Logan's training program was so

"closely related to the ultimate injury . . . that it actually caused the constitutional violation."[219]

Mr. Jensen has not suggested that Officer Gale or other Logan police officers were

trained to do the wrong thing; rather, his argument is that their general training on protecting

individuals in custody did not cover how to respond to Mr. Jensen's very specific, highly unusual

situation. This type of "failure to train" argument does not establish that Logan City was the

---

[216] *See A.L.A. v. West Valley City*, 26 F.3d 989, 990 (10th Cir. 1994) ("There is no dispute that confidential medical information is entitled to constitutional privacy protection."); *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986) ("The Due Process Clause directly protects fundamental aspects of personal privacy against intrusion by the State.").

[217] Summary Judgment Opposition 43, at 13.

[218] *Carr*, 337 F.3d at 1231 (denouncing the "post hoc, ergo propter hoc fallacy").

[219] *Id.*

"moving force" behind the injury or that the City "actually caused the constitutional violation."[220] The "moving force" and the cause of Mr. Jensen's injury was Hal Weston, not Logan City. While it may be true that Mr. Jensen might not have been sexually assaulted if Officer Gale had been trained to stand in Mr. Jensen's hospital room during medical tests, such training would be susceptible to challenge for running afoul of an arrestee's right to privacy. Also, in arguing that Logan City's failure to adequately train Officer Gale was the cause of Mr. Jensen's injuries, Mr. Jensen ignores the crucial fact that an intervening force—Hal Weston—was the proximate cause of Mr. Jensen's injuries.

"In virtually every instance where a person has his or her constitutional rights violated . . . , a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident."[221] "The standard of municipal liability, however, is proximate, not 'but for,' causation."[222] Mr. Jensen's argument "merely demonstrate[s] the omniscience of hindsight, rather than satisfying the demands of *City of Canton* and hence *Brown*."[223] Thus, there is no direct causal link between Mr. Jensen's injury and Logan City's alleged inadequate training.

### SUMMARY OF MOTION AND CASE

As there is no dispute over the material facts, and as Defendants are entitled to judgment as a matter of law, Defendant's Motion for Summary Judgment is granted in its entirety and Plaintiff's Counter Motion for Summary Judgment is denied. Plaintiff's First and Seventh Causes of Action are accordingly dismissed with prejudice. All of Mr. Jensen's claims have now been dismissed.

---

[220] *Id.* at 1231-32.

[221] *City of Canton*, 489 U.S. at 392.

[222] *Estate of Reat v. Rodriguez*, Case No. 12-cv-02531-REB-MEH, 2014 WL 4358333 at *3 (D. Colo. September 3, 2014) (citing *Mann v. Helmig*, 289 Fed. App'x. 845, 850 (6th Cir. July 16, 2008), *cert. denied*, 129 S.Ct. 767 (2008); *Spell v. McDaniel*, 824 F.2d 1380, 1388 (4th Cir. 1987), *cert. denied*, 108 S.Ct. 752 (1988)).

[223] *Id.* at 1230.

## ORDER

For the foregoing reasons, Defendants' motion to dismiss,[224] motion for judgment on the pleadings,[225] and motion for summary judgment[226] are GRANTED. Defendants' motion to strike[227] and Mr. Jensen's motion for summary judgment[228] are DENIED.

Mr. Jensen may file an amended complaint to attempt to restate his first cause of action against Chief Jensen by filing an amended complaint by January 2, 2015. If such an amendment is not filed, this case shall be closed.  If such an amendment is filed, the parties shall appear for a status conference on Friday January 9, 2015 at 10:00 a.m.

Signed December 18, 2014.

BY THE COURT

_____
District Judge David Nuffer

---

[224] Defendants' Motion to Dismiss and Memorandum in Support of Motion to Dismiss Claims against Logan City, Logan City Police Department, and Logan City Chief of Police Gary Jensen, docket no. 16, filed March 5, 2013.

[225] Defendants' Motion and Memorandum in Support of Motion for Judgment on the Pleadings, docket no. 21, filed May 1, 2013.

[226] Defendants' Motion and Memorandum in Support for Summary Judgment of Defendants, docket no. 41, filed May 27, 2014.

[227] Defendants' Motion to Strike Affidavit of Ronald Houston and Supporting Memorandum, docket no. 27, filed May 5, 2013.

[228] Plaintiff's Motion for Counter Summary Judgment and Memorandum in Support, docket no. 45, filed June 13, 2014